## Evans's Appeal.   Porter's Estate.

63   183|
194  189|
63   183|
198  840|
63        183
21 SC  ⁴ 67
63        183
26 SC ⁴213

1. A testator directed certain of his real estate to be sold, the proceeds to be applied to a charitable use, and having died within a month of the date of his will, it was decided that the gift was void.  *Held*, notwithstanding, that the order to sell was a conversion.

2. The parties who are to take the proceeds of land ordered to be sold, take no estate in the land.

3. A judgment against a person entitled to the proceeds of land ordered to be sold will not bind his interest.

4. An election to take land ordered to be sold, as land, must be by an unequivocal act, and all interested must join in it.

November 9th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Allegheny county*: In Equity.   Of October and November Term 1869.   In the estate of John M. Porter, deceased.

To March Term 1869, of the Court of Common Pleas of Allegheny, John M. Porter and others, part of the next of kin of John M. Porter, deceased, filed a bill against William V. Evans and others, executors, &c., of the decedent, setting forth that by his will he had directed certain real estate to be sold, and given $56,000 to be expended in the establishment of a college, &c.; that the will having been made within one month of the testator's death, and the devise being declared by the Supreme Court to be for a charitable use, it was decided to be void : that the said real estate therefore vested in the plaintiffs, and the executors had no right to sell, and that they had already sold enough real estate to satisfy all the other devises : the prayer was that the executors might be restrained from selling any real estate.

The will was dated November 30th 1865, and contained the following provisions, besides others: "I direct that my land and property, lying in Burrell township, in the county of Westmoreland, shall be divided (as per accompanying draft) and sold in the manner following:"   *   *   *

"And I also direct that all of my lands lying above, on the Allegheny river, in said township, shall be divided into 16 lots, (as per accompanying draft.)   Lot No. 1, being the one purchased of W. Kennedy, Esq., being sold with the coal privilege—the disputed coal privilege, (back of the remaining lots,) to be sold by itself. All of the above lots of land and coal privilege to be sold to the highest and best bidder, to the best advantage of the estate, upon such terms, and at such prices and payments as my executors may deem best for the estate.   Also, I direct that the farm, &c., shall be sold as to terms and payments (allowing William Irwin, the present tenant, three years' occupancy of it subsequent to my death, to give him time to find elsewhere a place).   Provided, he pays

regularly the rent agreed upon between us, viz.: the *one-third*. All of said lots, coal privilege and farm to be sold as soon as proper advertisement of them is made to the public, on such terms and prices as my executors may deem best, they acting to the best advantage of the estate.

"I also direct that the farm purchased of J. P. Vantine, now occupied by E. Burchfield, be sold by my executors, in as full and as large a manner as I could do myself if living, and the proceeds of the sale to be given and applied to the academy or college hereinafter mentioned, to be expended in the extension of the library, or improvements to the building, as the trustees may deem best. I also direct that the farm adjoining said Burchfield, and occupied by Hezekiah Irwin, shall be sold in like manner as the farm occupied by his father, as before directed. Also, I direct that the Martin farm be sold, as above stated in respect of the Vantine farm, and the proceeds applied as therein directed. And it is my wish that the said Hezekiah Irwin and E. Burchfield be permitted to stay in the places for three years after my death, upon their regularly paying their rents, respectively, as agreed upon, namely, the one-third, &c. * * * My interest in the Horse Creek and Tarentum Oil Company, I direct to be sold to the best advantage, giving the preference to the Company, &c. I also direct that my interest in the Himelwright property be sold by my executors, in as full and as large a manner as I could do myself, if living, and the proceeds to be applied as hereinafter directed. I also direct that the Walnut Bend property, &c., to be sold, and the proceeds be applied as hereinafter directed. Also, I direct that all my interest on Hickory be sold, namely, eleven lots, engines, tools, &c. Also, my interest in the Widow McClintock farm; also, my interest in the Fleming farm, being my interest in about nine and a half acres. Also, I direct that my interest in one thousand acres of land, in Lewis county, Kentucky, be sold in as full and large a manner, and for the best price that can be obtained by my executors. Also, I direct that my interest in the Porter, Donnell & Co. property, in Ohio, be sold, both real and personal, in as full and large a manner, and for the best price that can be obtained by my executors. I now give, devise and bequeath to Nancy Jane Porter McCall, my adopted sister, the house and lot I now live in. Also, the lot which I bought from John Adams, immediately on the west side of the lot on which the dwelling-house now stands, for and during her natural life, together, &c. * * *

"I also give, devise and bequeath to Robert Porter, the dwelling-house he now occupies, in connection with the piece of ground enclosed by fence, containing some two or three acres, and running to the Allegheny river, provided that when my executors come to sell the property adjacent, and should find that the disposition made to Robert Porter would injure the sale of the residue,

[Evans's Appeal.]

then I direct it to be sold, and property purchased by my executors of an equal value to the aforesaid house and lot described, and conveyed to the said Robert Porter by my executors.    *    *

"I also direct that \from three to five thousand dollars be expended in the improvement of the burial lots belonging to me in the Prospect Cemetery, in building a cut-stone wall, &c.

"I also give and bequeath the sum of fifty thousand dollars to be expended in the purchase of a lot or lots, and the erection of a college or university, with library rooms, &c., to be located in or near Tarentum, together with my library, and six thousand dollars additional to be expended in the purchase of useful books for the library, and it is my wish that the said college or university be known as the Porter University or College. And I do hereby appoint Rev. Joseph Horner, &c, trustees to purchase said lot or lots, and for the erection of the buildings, procuring a charter and library, with the general management of the whole concern ; with power, if necessary, to add to their number, and devise suitable ways for the election or appointment of their successors.    *    *

"It is my wish and intention, and I also direct that, after my real estate is sold and conveyed, the several bequeathments by me be made from my estate paid, that there be a proportionate amount expended in the further improvement of the cemetery lots before mentioned, and also a proportionate amount expended in the college or university buildings, library, &c.

"Also, I direct that, after the death of the said N. J. P. McCall, that the house and lots bequeathed to her for and during her natural life, be sold and conveyed by my executors, proceeds of such sale be applied to the benefit of the said college or university, including the library in and for the use of said university."    *    *    *

The will contained other bequests, but no residuary clause.

The defendants answered, averring that the directions of the will worked an absolute conversion of the real estate; they denied that the decision of the Supreme Court mentioned in the bill, interfered with their right to sell the real estate, and that enough property had been sold to meet the divises of the will. The court decreed the injunction prayed, for which, on appeal by the executors to the Supreme Court was assigned for error. The only question discussed in the Supreme Court, was as to whether there was an absolute conversion under the directions of the will.

*S. A. & M. Purviance*, for appellants, cited Shippen *v.* Clapp, 5 Casey 265; Chew *v.* Nicklin, 9 Wright 88; Hutchins *v.* Mannington, 1 Vesey, Jr. 367; Elwin *v.* Elwyn, 8 Id. 556; Brolasky *v.* Gally, 1 P. F. Smith 509; Allison *v.* Wilson, 13 S. & R. 330; Bleight *v.* The Bank, 10 Barr 131; Parkinson's Appeal, 8 Casey 455; Anewalt's Appeal, 6 Wright 414.

*T. M. Marshall* (with whom were *Shafer & Brown*), for appellees.

The opinion of the court was delivered, January 3d 1870, by

READ, J.—When the will in this case was before the court (in 3 P. F. Smith 292) the bequest "to be expended in the purchase of a lot and the erection of a college or university with library rooms, &c., together with my library and $6000 additional to be expended in the purchase of useful books for the library, and it is my wish that the said college be known as the Porter University or College," was held to be a charitable use, and the will, having been made within one calendar month before the decease of the testator, to be void by the eleventh section of the Act of April 26th 1855. There being no residuary legatee named in the will, all the property, excepting the devises and legacies to particular individuals, goes to the heirs or next of kin, according to law.

The power given to his executors to sell his real estate is in the most positive and direct terms, and converts it absolutely into personalty, according to all our authorities.

Judge Bell, in Willing *v.* Peters, 7 Barr 287, states the law on this subject very clearly. "Now," says the learned judge, "by the well settled rule in equity, land or money directed to be converted by a last will or other instrument is impressed with the character of the particular species of property into which it is to be transmuted. Thus land ordered to be sold is regarded as money for every purpose necessary to effectuate the intent of the devisor or donor. The parties to whom the proceeds are to be paid, whether heirs at law or strangers, take no estate in the premises which are to be the subject of the sale, as has more than once been held by this court after the most solemn and deliberate consideration. Thus it has been decided that a judgment recovered against one of several legatees, among whom the fund when made was to be distributed, will not bind his interest therein, for he is seised of no estate in the land which can be made the subject of a lien, and consequently, that a sheriff's sale of the legatee's supposed interest in the land passes nothing to the purchaser : Allison's Executors *v.* Wilson's Executors, 13 S. & R. 333; Morrow *v.* Brenizer, 2 Rawle 185. The principles upon which these decisions are based are familiar wherever the English system of equity prevails, and have been since frequently recognised by this court : Burr *v.* Sinn, 1 Whart. 265; Smith *v.* Starr, 3 Whart. 65; Rice *v.* Bixler, 1 W. & S. 445. It is very true the parties interested in the fund may elect to accept the land unconverted, and if they do so, will immediately acquire an estate therein. But this must be some unequivocal act, and when there are more than one entitled, all of them must join in the act of election, otherwise it is nugatory."

The bill in the present case is filed by one or more persons as

[Evans's Appeal.]

heirs of the testator, who are, however, only a portion of the persons entitled as heirs or next of kin, and who of course, have no right to elect to accept the land unconverted. The court below awarded a perpetual injunction, restraining and enjoining the executors, defendants in said bill, from proceeding to sell the real estate of their testator. In this we think the court were in error, for it is directly in the face of the positive directions of the will, and there are several legacies to be paid as well as debts, and money to be expended in the improvement of the burial lots belonging to the testator in the Prospect Cemetery. Some of the land is in other states, and it appears to have been the intention to turn all his property into money and to have it brought into the state of Pennsylvania. We therefore are of opinion that the executors have full power to sell the real estate and to distribute it to those persons who are entitled thereto by the laws of Pennsylvania.

The executors, in the discharge of their duties, will of course be under the control of our judicial tribunals, who will take care that the distributees will receive the amounts coming to each of them.

It is therefore ordered, adjudged and decreed that the decree below be reversed and the bill dismissed, at the cost of the estate of the testator.