## Rauch's Estate.

*Wills—Conversion—Real estate.*

In order to work a conversion of real estate there must be either (1) a positive direction to sell, or (2) an absolute necessity to sell in order to execute the will, or (3) such a blending of real and personal estate by the testator as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath said fund as money, and that, in each of the two latter cases, an intent to convert will be implied.

Testator directed as follows: " I will, bequeath and devise unto my executors hereinafter named, all my real and personal estate that I may die possessed of in trust and for the purposes herein named, and I hereby authorize and empower my said executors to collect all claims coming to me at my death and to make sale of all my real estate that I may die possessed of, and after such sale or sales made as aforesaid, to execute and deliver deed or deeds to the purchaser or purchasers in the same manner as I might or could do myself, one third of the purchase money to remain a lien on the real estate, the interest thereof to be paid to my beloved wife

annually during her life and at her death, said third to be distributed, as directed in this will." *Held* that the will worked a conversion of the real estate.

Parties interested in a fund may elect to accept the land unconverted, and if they do so, they will acquire an estate therein, but this election must be by some unequivocal act which must be joined in by all those entitled.

Equity permits the parties entitled to the fund to be raised by a sale, to take the land in lieu of the proceeds, and where the election is unequivocally manifested, an estate commensurate with the interest they would have had in the fund if raised, vests in the beneficiaries. The election may be manifested by acts in pais, but these must be of such a character as to leave no reasonable doubt of the intent.

Where there is a conversion of land into personalty by direction to sell in a will, and it appears that the land remained unsold for a long time by reason of financial conditions, that the executors had full control of the land, that one of the parties in interest always objected to any interference with the land by the heirs, and that the land was finally sold by the executors, there is no reconversion into real estate.

Argued May 7, 1902. Appeal, No. 60, April T., 1902, by Henry Rauch, from decree of O. C. Somerset Co., dismissing exceptions to auditor's report, in estate of John Rauch, deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of F. W. Biesecker, Esq., auditor.

The material portions of the auditor's report were as follows:

John Rauch died on October 19, 1872, testate, leaving to survive him a widow and five children. The former died several years ago. Letters testamentary upon said estate were granted to Henry Rauch and Aaron F. Bittner, executors. The only contention in this case, is whether Aaron F. Bittner, one of the executors, and who was married to Isabella Rauch, one of the daughters of said deceased, is entitled to one fifth of the proceeds of the sale of the real estate of said deceased, or whether he is only entitled to an interest as tenant by the curtesy; or whether he is entitled to take one fifth absolutely, or only the interest thereon during his lifetime. Aaron F. Bittner and his wife, Isabella, had one child only, who died two days before his mother. The mother died on the        18—, after the death of her father, John Rauch. The provisions are as follows:

" I will, bequeath and devise unto my executors hereinafter named, all my real and personal estate that I may die possessed of in trust and for the purpose hereinafter named, and to make sale of all my real estate that I may die possessed of, and after such sale or sales are made as aforesaid, to execute and deliver deed or deeds to the purchaser or purchasers in the same manner as I might or could do myself.   After my said executors shall have converted my said real estate into cash, I direct that the same shall be distributed as follows :

" (*a*)  Debts and funeral expenses.

" (*b*)  Full amount allowed to my wife by intestate laws.

" (*c*)  One-fifth to each full heir.   Share of Mrs. Boose to be divided :

" 1.  One-tenth to Mrs. Boose.

" 2.  One-tenth to John R. Boose."

It is conceded that the language of the will worked an equitable conversion of the land into money, but it is claimed that there was a reconversion of it into land, and that the proceeds of the real estate must be so distributed.

It being conceded that the will of the said deceased operates as a conversion of land into money, it follows, therefore, that it remains so, unless there has been an election to take as land. . . .

John Rauch died, seized of the following real estate : The home farm, the mountain tract, both of which were sold by the executors at the last sale, and a tract which was sold by the executors to J. W. Poffenberger, on March 27, 1884, and the money divided among the heirs.

According to the testimony of Henry Rauch, one of the executors of said deceased, " the panic of 1873 came on and we concluded it was a bad time to sell.   Among the heirs we arranged to lease."   The farm was accordingly leased to one Pritts.   In 1876 the farm was sold, by parol agreement, by the heirs to John R. Boose.   A deed was made, signed and acknowledged by the executors, but was never delivered.   John R. Boose took possession in 1877, and remained there until his interest was sold by his assignee in 1879, the said Boose having made an assignment for the benefit of creditors on January 30, 1879.   Mary A. Hay, one of the heirs of said deceased, became the purchaser of said interest at assignee's sale, but failed to make any payment of the purchase money.   Therefore,

John R. Boose having failed to carry out the sale negotiated with him, and Mary A. Hay, the vendee of his inchoate title, having formally abandoned all claim under it, the case remains as if no proceedings had been had.

The testimony of Henry Rauch and Norman D. Hay, who owns the interest of Rose Ann Hauger, Mary A. Hay, Rose Ann Hauger and John R. Boose, was in substance, that the heirs of John Rauch, deceased, took charge of the property and controlled it, making a sale to John R. Boose, in 1876, and after that fell through, then renting it up until the time that it was finally disposed of.

It appeared that the heirs were called together, whenever the farm was about to be rented and consulted as to the management and sale of the farm. But when the agreement for the rent of the farm to John Lentz came to be prepared, Henry Rauch was instructed by Aaron F. Bittner, his coexecutor, that the agreement be made for the executors. "He said he would not do it in any other way." The agreement was written by Henry Rauch, and signed by Henry Rauch and Aaron F. Bittner, executors of John Rauch, deceased. The rent was collected, the money distributed and paid out by the executors to the heirs, and the heirs in turn receipted to them as executors. In considering the testimony the interest of the parties should be remembered. The testimony is largely that of parties interested on the one side or the other. If they can establish a reconversion of the property, then interest on the share of Isabella, who was the wife of Aaron F. Bittner, would be payable to him during his lifetime, and the principal would be divided among the other heirs at his death. If no reconversion was worked, then Aaron F. Bittner, having survived his wife, Isabella, is entitled to her share in the estate as personalty. Henry Rauch testified that: "I asked Aaron if I should write it (the agreement) for the heirs or the executors. He said for the executors. He would not do it in any other way." Norman D. Hay testified that "Uncle Henry Rauch asked how he should write the lease, whether he should write it as heirs, and Mr. Bittner said, 'I object to that,' then some one made the remark, I don't know who it was, 'Go ahead and write it as executors.' Also three years later, 'Mr. Aaron Bittner said that he wanted

it understood that he did not want it to go along any longer, that the farm must be sold.'"

Mary A. Hay testified, that Aaron said he objected to write it as heirs, he wanted it as executors.

The foregoing testimony would not indicate that Mr. Bittner was willing that there should be a reconversion brought about by any acts on his part, nor does it appear that there was an "election unequivocally manifested. Though this manifestation may be by acts in pais, it must be of such a character as to leave no reasonable doubt of the intent, and where several are interested, all must unite in the act. He who avers unity of purpose an election must prove it:" Miller v. Mutch, 8 Barr, 115. It is difficult to conceive what other purpose Mr. Bittner had in view of his conduct as testified to by the heirs, than to prevent the working of a reconversion.

It is true the heirs were called together, and it was agreed that owing to the panic, the land should not be sold for the time being, that it should be rented. It was rented, the price of the rental agreed upon, etc. All of this exhibited a proper spirit toward the heirs, and a commendable interest in their inheritance, on behalf of the executors. But it does not go to show that the parties interested in the fund elected to accept the land unconverted.

In opposition to the testimony of the witnesses, who have endeavored to establish a reconversion, the following evidence goes to show that there was no reconversion, but that the status of the property fixed by the will remains. When the sale was made to John R. Boose, a deed was prepared by Henry Rauch, and duly acknowledged by Henry Rauch and Aaron F. Bittner, executors of John Rauch, deceased.

The interest of John R. Boose was afterwards sold by his assignee to Mary A. Hay, but she never complied with the contract and the title, therefore, remained as heretofore.

Some time after this the executors advertised the property and sold it to Samuel Bittner for $6,000, but there is no evidence that any of the legatees were consulted, or had anything to do with the sale.

At the auditing on the first account of the executors held on December 17, 1879, a paper was signed by all the legatees as follows: " The sale of the home farm and mountain tract

to Samuel W. Bittner, the former for $6,000, the other for
$125, are hereby rescinded and the said properties to remain
in the estate, each heir to hold the irrespective interest therein,
the same as though no sale had been made, sale not to be
enforced under three years."

This left the property remain as it was before.  It remained
"in the estate," that is in the executors, as it was especially
provided, that each was to hold his respective interest therein,
"as though no sale had been made."

On April 5, 1889, the executors executed a lease to John R.
Turner, to burn limestone on the home farm for a period of five
years.

From the death of John Rauch, in 1872, up to the filing of
the last account, all the business of the estate, including the
sale of the real estate, the leasing of the same, the collection of
the purchase money, and rents and all claims coming to the
estate, the payment of the money to the legatees, was trans-
acted in the names of the executors, and all the papers are in
the names of the said executors.

The auditor is, therefore, of the opinion, that the facts in this
case, under the rulings cited, do not work a reconversion of the
personal estate into land.

The court dismissed exceptions to auditor's report.

*Error assigned* was in dismissing exceptions to auditor's
report.

W. H. *Ruppel*, with him A. L. G. *Hay*, E. O. *Kooser* and
A. H. *Coffroth*, for appellant.—There was an equitable conver-
sion under the will: Hunt's App., 105 Pa. 128; Solliday's
Estate, 175 Pa. 114; Oliver's Estate, 199 Pa. 509; Yerkes v.
Yerkes, 200 Pa. 419; Smith v. Starr, 3 Wh. 62; Willing v.
Peters, 7 Pa. 287; Beatty v. Byers, 18 Pa. 105; Beal v. Stehley,
21 Pa. 376.

Where land is devised to executors to be sold, and the pro-
ceeds divided among legatees, the latter, if all of them consent,
may take the land instead of the money. . . . The land is sub-
stituted for the money, and vests in the person previously en-
titled to the proceeds: Shallenberger v. Ashworth, 25 Pa. 152;
McGarry v. McGarry, 9 Pa. Superior Ct. 71.

*W. H. Koontz* and *J. G. Ogle*, for appellee.—The will worked a conversion: Morrow v. Brenizer, 2 Rawle, 185; Gray v. Smith, 3 Watts, 289; Leiper v. Thomson, 60 Pa. 180; Dundas's App., 64 Pa. 326; McClure's App., 72 Pa. 417; Eby's App., 84 Pa. 241; Roland v. Miller, 100 Pa. 47; Hunt's App., 105 Pa. 128; Marshall's Est., 147 Pa. 77.

There was no reconversion: Jones v. Caldwell, 97 Pa. 42.

OPINION BY WILLIAM W. PORTER, J., July 10, 1902:

The will of John Rauch provided, inter alia: "I will, bequeath and devise unto my executors hereinafter named, all my real and personal estate that I may die possessed of in trust and for the purposes herein named, and I hereby authorize and empower my said executors to collect all claims coming to me at my death and to make sale of all my real estate that I may die possessed of, and after such sale or sales made as aforesaid, to execute and deliver deed or deeds to the purchaser or purchasers in the same manner as I might or could do myself, one third of the purchase money to remain a lien on the real estate, the interest thereof to be paid to my beloved wife, Catharine, annually during her life and at her death, said third to be distributed as directed in this will. 2. After my executors shall have converted my said real and personal estate into cash, I direct that the same shall be distributed as follows : " etc.

The first contention raised is that error was committed in holding that the terms of the will converted the real estate into personalty. The auditor finds in his report that the equitable conversion was conceded. The opinion of the court confirming the report of the auditor does not refer to the matter. The question seems, therefore, to have been seriously raised for the first time in this court. It needs little discussion. While the will does not contain a positive direction to the executors to sell the real estate, yet the whole scheme of the will indicates that the testator intended a distribution of money and not a devise of real estate. Equitable conversion is a fiction invented to sustain and carry out the intention of the testator: Yerkes v. Yerkes, 200 Pa. 423. That which is to be distributed by the will before us is described as cash. It has been said that in order to work a conversion there must be either (1) a positive direction to sell, or (2) an absolute necessity to sell in

order to execute the will, or (3) such a blending of real and personal estate by the testator as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath said fund as money, and that, in each of the two latter cases, an intent to convert will be implied: Hunt's Appeals, 105 Pa. 128, quoted in Keim's Estate, 201 Pa. 609, and in Sauerbier's Estate, 202 Pa. 187. An examination of the will of John Rauch leads inevitably to the conclusion that a conversion was worked by reason of the existence of the last two conditions.

The appellants allege, however, that even conceding the conversion, the acts of the parties in interest resulted in a reconversion and the court below should have held that the proceeds of the land, under the sale made by the executors, should have been distributed as real estate and not as personalty. It has been held that the parties interested in a fund may elect to accept the land unconverted, and that if they do so, they will acquire an estate therein, but that this election must be by some unequivocal act which must be joined in by all those entitled: Evans's Appeal, 63 Pa. 183 ; see also Willing v. Peters, 7 Pa. 287. Again it has been held that equity permits the parties entitled to the fund to be raised by a sale, to take the land in lieu of the proceeds, and that where the election is unequivocally manifested, an estate commensurate with the interest they would have had in the fund if raised, vests in the beneficiaries. The election may be manifested by acts in pais, but these must be of such a character as to leave no reasonable doubt of the intent: Beatty v. Byers, 18 Pa. 105. The report of the auditor in this case evinces due consideration of these principles of law applicable to reconversion. The report contains a review of the testimony by which an election by the legatees to take the realty as such, is alleged to have been shown. The auditor reaches the conclusion that the facts exhibited by the testimony do not work a reconversion. The learned judge of the court below in dismissing the exceptions to the auditor's report, says, that the auditor's conclusion upon the evidence is : "That it fails to show a unanimous purpose and effort of all those interested in the estate to effect a reconversion. It seems to be sustained by the proofs and decisions," etc. We discover no reason to disturb the finding of the auditor thus approved by the court. It appears that by reason of financial conditions,

the real estate was not sold by the executors until many years after the death of the testator ; but lapse of time without a sale, even if acquiesced in by the legatees, does not raise an inference of election to take the real estate unconverted : see Beatty v. Byers, supra. It appears further that during the time the property remained unsold, the legatees were consulted by the executors in the renting and the attempted sale of the real estate ; that the executors were not deprived of the control of the property ; that one of the parties in interest manifested opposition to any suggestion that the real estate should be dealt with by the heirs apart from the executors ; and that the consummation of the trust was a sale by the executors and a bringing in of the fund in cash for distribution as contemplated by the terms of the will.

The decree of the court below is affirmed.