# Cochran *against* O'Hern.

A husband is not entitled to an estate by the curtesy, out of land conveyed to a trustee for the sole and separate use of the wife in fee simple.

A mortgage in fee by a husband and wife of land devised to the wife "for her own and sole use for ever," and if her husband survive her for life to him, with remainder in fee to her children, or such other person as she by her last will and testament may order and direct, is void as to the estate of the wife, and all else, except the life estate of the husband.

ERROR to the District Court of *Allegheny* county.

George Cochran, executor of John Speer, who survived James B. Cochran, against John O'Hern and the executors of Sarah O'Hern, with notice to the terre-tenants. *Scire facias* upon a mortgage, which conveyed two lots of ground; the defence was that the mortgagors had not such title as they could convey. One was derived by the following clause in the will of Edward Tyler.

"The 10 acre lot above mentioned I give, devise and bequeath to Sarah O'Hern the present wife of John O'Hern for her own and sole use for ever: Provided always, That if said John should survive said wife—it is my will that said John O'Hern shall have and

[Cochran v. O'Hern.]

enjoy the use and profits of said 10 acre lot during his natural life, and at his death the lot shall descend in fee to the children of said Sarah, or such other person or persons as she by her last will and testament may order and direct."

The other lot was derived by deed, which expressed the following trust:

1826, 6th of Nov.  Deed of Edward Tyler to Peter Baird for lot No. 68.

" In trust for the sole and only proper use, benefit and behoof of Sarah O'Hern, wife of John O'Hern, hereinbefore named, and sister of said Peter Baird, her heirs and assigns for ever, (reserving a rent or annuity of $18 to the grantor during life.)  And also upon special trust that he, the said Peter Baird, his heirs and assigns, shall and will either receive and pay to, or permit and suffer the said Sarah O'Hern her heirs and assigns to receive all the clear yearly rents, issues and profits, except the annuity aforesaid, of the lot hereby granted, the same to go and be to and. for the sole, separate and peculiar use, *benefit and disposal* of the said Sarah O'Hern, her heirs and assigns; and that the same or any part thereof shall not in any wise be subject or liable to the disposal, intermeddling, control, engagements, debts or encumbrances of him the said John O'Hern, her husband, or his creditors, or any of them; and it is the true intent and meaning of these presents, that nothing herein contained shall be taken and construed, either at law or in equity, to vest any title, claim or challenge whatsoever, in the said John O'Hern, or any person or persons claiming or to claim by, through, from or under him, of, in or to the said described premises, or any part thereof."

On the 21st of November 1829, Sarah O'Hern died, having made her last will and testament, by which she devised the 10 acre lot to her daughter Ann Church, and lot No. 68 to Michael O'Hern in fee.

GRIER, President, whose opinion was the subject of the errors assigned, thus ruled the cause:

" The intent being clear in this case that the property devised should be for the sole and separate use of Mrs O'Hern, equity will supply a trustee; or in other words, we will construe the devise as if the estate had been devised to a trustee for the sole and separate use of the devisee.  A use thus limited to any other than a married woman or *feme* in contemplation of marriage would be executed.  But it being necessary to a separate provision that the legal estate should remain in the trustees to prevent the husband from taking the profits and defeating the very object of the conveyance, equity will not treat the use as executed.  Whatever uncertainty there may be in England as to the extent of the power of a *feme covert* over her separate estate, the law is well and judiciously settled in Pennsylvania, that a married woman is to be deemed to possess no power in respect to her separate estate

[Cochran v. O'Hern.]

but what is particularly given or reserved to her by the instrument creating such estate. To treat her as a *feme sole* as regards her separate property, according to the tendency of the late English decisions, leaves her infinitely worse protected than if she were left to her legal rights. There are instances of wives having been coaxed or bullied out of the protection provided even at the instant when the settlement was before the Court of Chancery. But even in England there is not an instance in which she has been permitted to lay her hands on the inheritance. See 1 *Rawle* 247. Her disability is designed to protect her against the husband's power. But to exclude his direct control, which consists in exercise of legal power, and yet leave him the means of giving an effect to an indirect control which consists in personal influence, is nothing; we daily see the incompatibility of the wife's protection with the qualified power of alienation given her by our statutes: and the English Chancery Reports show that the same mischief has ensued from license allowed her under deeds of settlement, by reason of which, what would otherwise have kept the wolf from the door has been wasted or pirated by the husband. *Thomas* v. *Folmer*, (2 *Wheat.* 16).

We must treat this then as a devise to a trustee in trust to permit Sarah O'Hern to receive and take the rents and profits to her own separate use during her life. And after her death, in case her husband survived her, he is to be permitted to receive the profits, &c., for life; and after his death the lot shall descend to the heirs of the body of Sarah O'Hern, ' or such other person or persons as she by her last will and testament may order and direct.' Sarah O'Hern had therefore no power to mortgage this property for her own debts, much less for her husband's debts. The only power given her in the will is that which she has executed by devising it to her daughter Ann. But as Mrs O'Hern is dead, the contingency has happened whereby a life estate in the lot has become vested in John O'Hern the husband. Although no judgment should be entered on this mortgage or sale made under it, to affect the rights of the devisee of Mrs O'Hern, yet John O'Hern is estopped by his deed, and cannot gainsay a judgment in this case, as against his interest in the land, notwithstanding at the time he made the deed his interest was not vested but contingent."

As to the lot conveyed by the deed of Edward Tyler, the court instructed the jury that the mortgage was utterly void.

*M'Candless* and *Biddle* for plaintiff in error, examined the cases in 9 *Watts* 127, and 1 *Rawle* 148, and argued that the principles there settled were not applicable to this case, which was that of a devise to the wife, without the intervention of a trustee, for her sole use, and with power to dispose of the estate at her death.

And as to the estate conveyed, they contended that such an estate was vested in the wife and entitled the husband to an estate for life as tenant by the curtesy; and which would pass by the mortgage, and cited 5 *Mad. Chan.* 249; 4 *Whart.* 452.

*Darrah* and *Williamson, contra.* By the will the wife was entitled to an estate for life with the power of appointment, and in default of its exercise it would go to her children. She could not execute the power to dispose of the property otherwise than by will. 1 *Sug. on Powers* 107. But if the wife were entitled to the fee, it was for her sole and separate use, although no trustee was named; 6 *Serg. & Rawle* 466; *Clancy* 267; and therefore she could not mortgage. As to the lot conveyed to the wife, she had no power over it to convey or encumber it. *Ram on Wills* 209. She has an estate without the power over it. 2 *Wils.* 6; 1 *Bos. & Pul.* 192; 7 *Vez.* 583; 12 *Eng. C. L. Rep.* 363.

The opinion of the Court was delivered by

Rogers, J.—The positions taken as to the construction of the will have not been impugned, nor could the attempt be made with the least prospect of success: we therefore assent to that part of the case, for the reason given by the learned judge of the District Court. The argument here is only as to the effect of the deed of the 6th of November 1821. The point is new in this State, and does not seem to have been taken in the court below, and brings up the question, whether a husband is tenant by the curtesy of real estate conveyed to a trustee for the sole and separate use of a wife in fee. As a general proposition, it is conceded that a husband may be tenant of a trust, even if executory in the wife; for the husband becomes such whenever the wife, during the coverture, is in possession of an equitable estate of inheritance, and has issue by the husband capable of that inheritance. Here the wife has an equitable estate of inheritance, and if there was nothing else in the case, there is every requisite to constitute the husband tenant by the curtesy. The property, however, is conveyed to a trustee for her sole and separate use in fee; and in *Hearle* v. *Greenbank,* reported in 1 *Vez.* 298, and in 3 *Atk.* 716, the point is ruled against the right of the husband. Lord Hardwicke in giving the judgment, puts it on two grounds, want of seisin in the wife, or rather in the husband, and on the intention of the devisor. He observes, that to make the husband tenant by the curtesy, the wife must have the inheritance, and there must be likewise a seisin in deed in the wife during coverture. It was true she had the inheritance, but then the father, whose estate it was, has made the daughter a *feme sole,* and has given the profits to her separate use; therefore, what seisin he asks could the husband have during the coverture? he could neither come at the

[Cochran v. O'Hern.]

possession nor the profits. In *Morgan* v. *Morgan*, (5 *Mad. C.* 245), the authority of *Hearle* v. *Greenbank*, if not overruled, is shaken as to the first ground taken by Lord Hardwicke, as to the seisin. It is said to be contrary to *Roberts* v. *Dixwell*, (1 *Atk.* 606), where the same judge said that a devise to her separate use would not bar the husband, because there was a sort of seisin in the wife; and to *Pitt* v. *Jackson*, (2 *Bro. Ch.* 51), where it seems to have been held that the receipt of the rents and profits is a sufficient seisin in the wife; or to *D'Grey* v. *Richardson*, (3 *Atk.* 469), where it would appear as if no seisin in the wife is necessary to entitle the husband to be tenant by the curtesy. It may be observed that *Roberts* v. *Dixwell* is but a dictum, whereas in *Hearle* v. *Greenbank* the point is expressly ruled, and in the latter case it is put not on the seisin of the wife but of the husband; for what seisin could the husband have, as the court say, during the coverture, when he could come at neither the possession nor the profits, for a husband cannot be tenant by the curtesy, unless he can show seisin in himself in right of his wife. According to Lord Coke, *Co. Lit.* 30, *a*, to make a tenant by the curtesy, there ought to be a right in the husband initiate in the life of the wife, which cannot be where she receives the rents and profits during coverture, and which he has no right to control. But admitting the technical reason to be unsound, what becomes of the other reason, that it is contrary to the intention of the testator that the husband should be tenant by the curtesy. The Vice Chancellor, in *Morgan* v. *Morgan*, evades this ground, and puts the case upon the fact that no such intention is evinced, because the rents and profits are given to her for life, and therefore the husband is partially, but not wholly, excluded from the enjoyment of his wife's property. Without examining the propriety of this distinction, the force of which I do not feel, yet, it may be sufficient to observe that it does not apply, because here it is given to the wife in fee-simple, manifesting most clearly that the intention was to exclude the husband from any interest whatever in the estate. But be this as it may, it is conceded on all hands in *Morgan* v. *Morgan*, and in *Bennet* v. *Davis*, (2 *Pr. Will.* 316), that where lands are devised to the wife for her separate and exclusive use, with a clear and distinct expression that the husband is not to have a life estate or other interest, but the same to be for the wife and her heirs, a Court of Chancery will bar the husband of his curtesy. Taking the intention as the rule, here there are strong words of exclusion. It is given to her sole, separate and peculiar use, benefit and disposal, in fee-simple, and it is ordered that no one part of the premises shall be in anywise subject or liable to the disposal, intermeddling, control, engagements, debts or encumbrances of the husband, his creditors or any of them. And that nothing, either in law or equity, shall be taken or construed to vest any title, claim or challenge whatever in the husband, or any person or persons claiming

under him, in the same premises, or any part thereof. It is therefore apparent it was intended by the parties to exclude the husband from any interest whatever in the premises; and it would contravene the intention of the parties to the deed to hold that he has notwithstanding a life estate. It has been suggested that by force of the word disposal the wife has the power to sell, and by consequence to mortgage the premises, the greater including the less. But this word does not refer to the *corpus* of the grant, but to the rents, issues and profits which she has the right to use or dispose of as a *feme sole*. In this State a *feme covert* is, in respect to the separate estate, deemed a *feme sole* only to the extent of the power clearly given by the instrument by which the estate is settled, and has no right of disposition beyond it. *Lancaster* v. *Dolan*, (1 *Rawle* 247.)

Judgment affirmed.