# Dodson *versus* Ball.

1. The right of the owner to control property is fundamental, but the right must be so regulated as not to conflict with public interests.

2. Trusts are simple and special; in the one the trustee is passive, performing no duty and the trust is merely technical; in the other he is active executing the donor's will and the trust is operative.

3. A simple trust gives to the cestui que trust, the right to the possession, control and disposal of the property, and the legal estate is executed in him unless when necessary to remain in the trustee to preserve it for the cestui que trust or pass it to another.

4. A special trust maintains the legal estate in the trustee to perform the

[Dodson *v.* Ball.]

duties imposed by the donor, and the cestui que trust has but a right in equity to enforce performance.

5. Equity preserves an actual trust to give effect to the donor's right of dominion over his property; but in favor of public policy permits a passive trust to fall.

6. When an estate for life only is given followed by a general power of appointment and on failure to appoint, to children or special heirs, the power will not enlarge the estate of the cestui que trust into a fee, and on a failure to appoint, the donee in remainder will take by purchase and not by limitation.

7. A limitation to heirs on a failure to appoint, enlarges a life estate into a fee.

8. It seems that whenever the intention of the donor is to limit an estate to the heirs of the life tenant no matter how his intent is expressed, an estate of inheritance will vest in the life tenant; but when he intends his bounty to vest in certain persons though they may be the same as his heirs at law, the life estate will not be enlarged and a power of appointment whether general or special will not change this rule.

9. H. being unmarried conveyed her estate to B., in trust to allow her to occupy it, &c., and receive the rents, &c., for her separate use for life, without any let from any husband, and on her death convey it to the persons to whom she should will it, and in default of appointment to the persons who would be entitled if she had died seised in fee simple, with power to the trustee to charge the investments to be held on the same trusts, the trusts not to be changed without the consent of B., any vacancy in the trust to be filled by H. by writing under seal. H. afterwards married and became discovert. *Held,* that the trust fell and she was entitled to a conveyance of the legal estate in the trust property.

February 9th 1869. Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ. READ, J., at Nisi Prius. SHARSWOOD, J., absent.

This was a certificate from Nisi Prius: No. 28, to January Term 1869 : In Equity.

The bill was by Harriet S. Dodson against George B. W. Ball. It set out that on 19th of July 1843, the plaintiff being a single woman, and having no marriage in view, conveyed all her real estate to the defendant and Charles H. Ball, in trust to permit the plaintiff to occupy, manage, let and demise, and take and receive the rents, issues and profits—for her sole and separate use, and for such other use or uses as she may see proper, for the term of her natural life, without any let, hindrance, or molestation of any husband she may have, or of any other person or persons whomsoever, and acquittances, or other sufficient discharges, to give for the same, notwithstanding her coverture, she paying all taxes on the said premises, and all necessary and proper repairs thereof. And upon her decease, then do and shall grant and convey the said premises unto such person or persons, and for such estate and estates, as she, by any instrument of writing, in the nature of a will, under her hand and seal, &c., notwithstanding her coverture, shall direct, limit and appoint. And in case of no such direction, limitation or appointment, then do and shall grant and convey the said premises to such person or per-

[Dodson *v.* Ball.]

sons as would be entitled to the same if she had died intestate, seised of the said premises in fee simple, and in such manner and for such quantity of estate as such person or persons would in such case be entitled to by law: Provided, &c., that it shall and may be lawful for the said George B. W. Ball and Charles H. Ball at any time, should they think it most advisable for the benefit and advantage of the said Harriet S. Ball, to sell and dispose of the hereby granted premises, or any part thereof, either at public or private sale, and, &c., grant, convey and assure the same to the purchaser, &c., discharged of and from any trust or limitation whatsoever, and the money arising from such sale to re-invest in other property, either real or personal, in trust for the same uses, &c., provisos, limitations and conditions hereinbefore mentioned, expressed and declared of and concerning the premises hereby conveyed, and to and for no other use or purpose whatsoever: Provided, also, that the several trusts hereby created shall not in any wise be changed, altered or affected without the consent of the said George B. W. Ball and Charles H. Ball, or their several successors, be first had and obtained, &c., with power to the plaintiff by writing under seal to appoint trustees for the same trusts in case of a vacancy, &c.

The plaintiff was married to Richard W. Dodson, in January 1846. Charles Ball, one of the trustees, died in 1852, and the husband died July 23d 1867; the plaintiff has two children, one of age and the other nearly of age. She prayed "that said defendant be directed and decreed, by said court, to convey all said properties to her, and her heirs and assigns, as her absolute estate, free and discharged from all trusts, and for further relief. Attached to the bill was a schedule of the trust property, consisting of stocks, bonds and mortgages, ground-rents, and other real estate.

The defendant in his answer admitted the allegations of the bill, and said he was ready to transfer the trust estate if the court should deem it equitable and proper, and submitted himself to such decree as the court should make. The bill was dismissed at Nisi Prius without argument, and the plaintiff appealed, assigning the dismissal for error.

*S. Wakeling* and *E. K. Price* for appellant.—Mrs. Dodson, now discovert, has the equitable estate, without any active trust in the trustee, for life, with the fee; for the limitation over is to her heirs. This is a dry trust, or a use executed: Smith *v.* Starr, 3 Whart. 62; Hammersley *v.* Smith, 4 Id. 126; Steacy *v.* Rice, 3 Casey 75; Dubs *v.* Dubs, 7 Id. 149. Trustee is not to receive and to pay to her the income; as in Barnett's Appeal, 10 Wright 392; and Bacon's Appeal, 7 P. F. Smith 504. A trustee only takes the legal estate while it subserves an active trust: Hawkins

[Dodson v. Ball.]

on Wills 143; Hill on Trustees 239; Nice's Appeal, 14 Wright 143; McBride v. Smyth, 4 P. F. Smith 245. The direction to convey to, the heirs does not, in our state, decide that the legal title is in him: Nice's Appeal, Bacon's Appeal, *supra.* "The legal title remains severed from the beneficial ownership so long only as there is any useful purpose, or substantial reason, for maintaining a separation." A separate use for a woman cannot be created, unless she is covert, or unless in immediate contemplation of marriage. Though a special active trust may be created for man or woman single. To give operation to the rule in Shelley's Case, it is not necessary that the word heirs should be used, if heirs, and all who can be heir, are included in the description of those who are to take: Fearne on Rem. 188, 192, 194; Smith on Executory Interests, §§ 433, 434; Ralston v. Waln, 8 Wright 281; Physick's Appeal, 14 Id. 128.

*C. E. Lex,* for defendant.

The opinion of the court was delivered, May 11th 1869, by

AGNEW, J.—Two opposite principles underlie the doctrine of trusts, private dominion and public policy. Each has predominated, as the judicial mind has inclined to the one or to the other. The right to control the disposal of property is fundamental; and yet this right must be regulated so as not to conflict with high public interests. In this state the current set in strongly in favor of the former in Lancaster v. Dolan, 1 Rawle 231; wherein Chief Justice Gibson defended with great force the donor's right to control his gift in behalf of a married woman. That case was followed by many on that side, and among them are Fisher v. Taylor, 2 Rawle 33; Pullen v. Reinhard, 1 Whart. 520; Thomas v. Folwell, 2 Id. 11; Smith v. Starr, 3 Id. 62; Dorrance v. Scott, Id. 309; Holdship v. Patterson, 7 Watts 547; Wallace v. Coston, 9 Id. 137; Cochran v. O'Hern, 4 W. & S. 95; Ashhurst v. Given, 5 Id. 323; Rogers v. Smith, 4 Barr 93; Eyrick v. Hetrick, 1 Harris 491. The current, checked by Harrison v. Brolaskey, 8 Harris 299, was turned in the opposite direction by Kuhn v. Newman, 2 Casey 227, and ran then violently in favor of the policy of striking down trusts. That case was followed in the same direction by Whichcote v. Lyle, 4 Casey 73; Williams v. Leech, Id. 89; Price v. Taylor, Id. 95; Bush's Appeal, 9 Id. 85; Naglee's Appeal, Id. 89; McKee v. McKinley, Id. 92; and Kay v. Scates, 1 Wright 31. This counter-current received a check in Guthrie's Appeal, 1 Wright 9, which overthrew Williams v. Leech, and strongly denied some of the positions of Price v. Taylor, Naglee's Appeal, and McKee v. McKinley. In Guthrie's Appeal, Woodward, J., who before had been overborne by numbers, after a graceful compliment to

[Dodson *v.* Ball.]

the principle of *stare decisis*, gave his adherence to the new majority.   But the counter-current, which had been merely checked in Guthrie's Appeal, gathering force, prevailed again in Kay *v.* Scates, the opinion, however, looking one way, while the judgment faced another, ruling the case by Kuhn and Newman and Bush's Appeal.   After spending its force in that direction, the current began to change with Ralston *v.* Waln, 8 Wright 279, and in Barnet's Appeal set back strongly in its former direction, in favor of the donor's control, and has so continued.   Barnet's Appeal was followed by Girard Life Insurance and Trust Co. *v.* Chambers, 10 Wright 485; Shankland's Appeal, 11 Wright 113; Physick's Appeal, 14 Wright 128; Nice's Appeal, Id. 143; Sheets's Estate, 2 P. F. Smith 267; Wickham *v.* Berry, 5 Id. 70; Freyvogle *v.* Hughes, 6 Id. 228; Bacon's Appeal, decided at Philadelphia, 1868, 7 P. F. Smith 514, and Rife *v.* Geyer, decided at Pittsburg, 1868, 9 Id. 393.   The result of these conflicting principles and authorities is, that it is difficult to determine cases lying along the border.   The present, in some of its aspects, is one of that kind.   In order to decide it, it will be proper to refer to some leading and established principles in the doctrine of trusts.   Trusts are of two kinds, *simple* and *special:* Vaux *v.* Park, 7 W. & S. 25.   In the former, the trustee is passive and performs no duty; and the trust is there purely technical.   In the latter he is active, being an agent to execute the donor's will; and the trust is operative.   A simple trust gives to the cestui que trust a right to the possession, control and disposal of the property, and the legal estate becomes executed in him, unless when it is necessary to remain in the trustee to preserve the estate for the cestui que trust, or to pass it to others.   A special trust, on the other hand, maintains the legal estate in the trustee, to enable him to perform the duties devolved on him by the donor; and gives to the cestui que trust only a right in equity to enforce the performance of the trust: Ibid.; See also Barnet's Appeal, 10 Wright 400; Rife *v.* Geyer, *supra*.   And where the trust is not active the legal estate will remain in the trustee so long as it is necessary to preserve the estate itself, as in the case of a trust for a married woman to protect the estate from her husband; or a trust for a spendthrift son to protect it from his creditors; or to preserve contingent remainders: Lancaster *v.* Dolan, 1 Rawle 247; Pullen *v.* Reinhard, 1 Whart. 520; Thomas *v.* Folwell, 2 Id. 11; Wright *v.* Brown, 8 Wright 224; Fisher *v.* Taylor, 2 Rawle 33; Holdship *v.* Patterson, 7 Watts 547; Ashhurst *v.* Given, 5 W. & S. 323; Eyrick *v.* Hetrick, 1 Harris 491; Brown *v.* Williamson, 12 Casey 338; Barnet's Appeal, 10 Wright 409; Rife *v.* Geyer, *supra*.   As a consequence, it is a general principle, that a simple or passive trust cannot continue the legal estate in the trustee, except for a proper and useful purpose, such

'[Dodson *v.* Ball.]

as the law will regard and protect, and as soon as the purpose fails or ceases to exist, the legal estate becomes executed in the cestui que trust.   In the former case, equity preserves the trust to give effect to the donor's right of dominion over his property, and in the latter, in favor of public policy, permits it to fall as useless: Freyvogle *v.* Hughes, 6 P. F. Smith 228; McBride *v.* Smyth, 4 Id. 250; Rife *v.* Geyer, *supra.*

In view of these principles, let us examine the trust in this case.   Its principal features are these: Harriet S. Ball, the grantor as well as the cestui que trust in the deed, was the absolute owner of the property.   She was a feme sole, without a marriage then in prospect.   The coverture which took place two and a half years afterward, had ceased by the death of her husband. The only useful purpose visible in the deed was the preservation of her property to her sole use, during a coverture that might take place (it being before the Act of 1848), and its transmission, by will or descent, if she died during coverture.   The trust is purely passive, requiring no active duty except conversion for her benefit and advantage.   That and the ulterior trusts are in point of fact immaterial and useless after coverture has ceased.   There being no marriage in contemplation, and the subsequent coverture being ended by the death of Mrs. Dodson's husband, the trust must fall and the legal estate be executed in her, unless it is necessary to support it as an independent provision for children or others who can claim hereafter as purchasers under the deed. The only ground even for a question on this point, grows out of the primary limitation to herself for life.   If upon that she has engrafted a remainder to vest the estate in certain persons as purchasers by description, and not as heirs, it raises the question, whether she has lost the control of her own property by such a provision, without a marriage in view or one now in existence. If the trust, as expressed, does not in fact break the course of descent, there seems to be no good reason to interpret it so as to divest her of her control of her own property, and the trust should fall.

The rule laid down is, that when an estate for *life* only is given, followed by a general power of appointment, and on failure to appoint, to children or to special heirs, the power to appoint will not enlarge the estate of the cestui que trust to a fee, and on a failure to appoint, the children or special donees in remainder take by purchase from the donor, and not by way of limitation as heirs of the cestui que trust: 4 Kent's Com. 663; Smith *v.* Starr, 3 Whart. 66; Anderson *v.* Dawson, 15 Vesey, Jr. 532; Girard Life Insurance and Trust Co. *v.* Chambers, 10 Wright 490.   A limitation to heirs on a failure to appoint, unquestionably enlarges a life estate to a fee by the union of estates: Ralston *v.* Waln, 8 Wright 279; Physick's Appeal, 14 Id. 128; Nice's Appeal, Id.

10 P. F. Smith—32

143. The question is then, what effect should be given to the language of the ultimate limitations in this case. These are as follow: "And upon the decease of the said Harriet S. Ball, then do and shall grant and convey the said premises unto such person or persons, and for such estate and estates as the said Harriet S. Ball, by any instrument of writing, in the nature of a will, under her hand and seal, executed in the presence of two or more subscribing witnesses, notwithstanding her coverture, shall direct, limit and appoint. And in case of no such direction, limitation or appointment, then do and shall grant and convey the said premises to such person or persons as would be entitled to the same if the said Harriet S. Ball had died intestate, seised of the said premises in fee simple, and in such manner and for such quantity of estate, as such person or persons would in such case be entitled to by law. Provided also, that the several trusts hereby created shall not in anywise be changed, altered or affected, without the consent of the said George B. W. Ball and Charles H. Ball, or their several successors, be first had and obtained."

In Anderson *v.* Dawson, 15 Ves., Jr. 532, it was held that a settlement by a feme sole in contemplation of marriage, to herself for life, with a general power of appointment by will, and on failure to appoint, then in trust for her next of kin, their executors, administrators and assigns, according to the Statute of Distributions, did not vest her with the absolute property in the fund, the next of kin taking by purchase. But Sir William Grant, Master of the Rolls, evidently considering it a mere question of interpretation, took the distinction between a limitation to the *executors* and *administrators* and a limitation to the *next of kin*, the former as to personal property, giving to the limitation the same effect as a limitation to the right heirs in regard to real estate; and the latter resembling a limitation to particular heirs. This distinction is recognised by Judge Story, in his work on Equity, vol. 2, § 1394. The distinction was followed and applied in both ways in Ralston *v.* Waln, 8 Wright 279, where there were two deeds, and so clearly was it considered a question of interpretation only, the terms "legal representatives" were held to mean in one deed the next of kin, while in the other they meant executors and administrators; in one case giving to the cestui que trust a *life* estate only, and in the other enlarging it to an absolute estate. Then came The Girard Life Ins. and Trust Co. *v.* Chambers, 10 Wright 486, which was the case of an active trust of personal property for a son for life, where it was held that a trust in default of appointment "to such person or persons for such estates and in such shares as by the laws of the state of Pennsylvania would be entitled to the same, as if the said S. E. W. had died intestate and seised and possessed thereof," meant the next of kin. But there a manifest intent appeared from the active

character of the trust, and the terms of the deed to preserve the estate for the son's children. Then follow the cases of Physick's Appeal, 14 Wright 128, and Nice's Appeal, Id. 143, which carried the rule of interpretation quite as far on the opposite side in giving effect to the word heirs, notwithstanding qualifying expressions denoting distribution. In the former, the devise was to trustees for the life of Emlen Physick, with power of appointment, and on failure to appoint, then " to be *equally divided among the right heirs* of my said nephew, Emlen Physick, to *them, their heirs, executors, administrators and assigns* for ever." In the latter case the devise was to trustees for the separate use of Amanda Laws, and after her decease (there being no power of appointment) the trustees " shall grant and assign the said residue of my estate, real and personal, unto such person or persons as shall be the right heirs of my said daughter Amanda, their heirs, executors, administrators and assigns for ever, in such proportions as they would be entitled to, agreeably to the laws of Pennsylvania, in case my said daughter Amanda had died intestate, seised and possessed of the same in her own proper right." In these cases it was held, notwithstanding the qualifying terms, that the interpretation of the limitation would carry the estate to the heirs, and consequently the life estate of the cestui que trust was enlarged to a fee simple. The doubted case of Harrison v. Brolaskey, 8 Harris 299, may also be referred to, to show that the question is purely one of interpretation, and the reasons which influence the determination. The trust there was for the separate use of a married woman with power of appointment by will, and on a failure to appoint, " then in trust for all such person or persons as would, by the intestate laws of Pennsylvania, at the decease of the said Mary Harrison, have become entitled to the personal estate, if her said husband or any other husband had died during her lifetime." Lowrie, J., says, " the whole profit of it (the estate) is hers; she may dispose of it by will, and if she die intestate it goes to her representatives. These rights indicate an absolute estate, and such in equity it was, and such it was at law with us, unless there was sufficient reason for preserving the distinction between the legal and equitable title. It is preserved during the life of the husband in order to save it from him. But when he is dead she is free from the law of her husband, and stands *sui juris,* and has a right to demand the control of what in equity is hers." Harrison v. Brolaskey is said, by Justice Read, in 10 Wright 490, not to be law, unless reconcilable on the ground that the estate is *not* expressly limited to Mrs. Harrison for *life*. But it has some weight in the interpretation of language somewhat similar to that used in the present case, and accords with the general rules of interpretation in seeking the true intent of the donor: Fearne on Remainders 188, 189. In the same respect

[*Dodson v. Ball.*]

the overruled and doubted cases of Williams & Wife *v.* Leech, 4 Casey 89, Naglee's Appeal, 9 Id. 89, and McKee *v.* McKinley, Id. 92, may be referred to. Those cases decided that a devise for life with remainder to children and their heirs, and in some of the cases with superadded words of distribution, gave an estate of inheritance to the life tenant. The rule there laid down was also stated in Price *v.* Taylor, 4 Casey 95, in these words: " If, therefore, the remainder is to persons standing in the relation of general or special heirs of the tenant for life, the *law presumes* that they take as heirs unless it unequivocally appears that individuals other than persons who are to take simply as heirs are intended." In Guthrie's Appeal, 1 Wright 16, this rule was denied by Judge Strong, who said the assertion was too broad. He was clearly right, for undoubtedly upon the terms of the wills in those cases the opposite presumption was true, the words being those of purchase and not of limitation.

So far, it may be said, therefore, the authority of these cases is overturned. But the cases still are authority for this, that whenever the terms of the limitation can be fairly and justly interpreted to mean " heirs" or " heirs of the body," an estate of inheritance will be presumed to have been intended by the testator. And in Guthrie's Appeal, p. 14, it is admitted, that the words " children" and " issue" may be interpreted to mean heirs of the body when this is the evident intent of the testator. The decisions in all the cases show the undoubted tendency of the judicial mind in this state to follow the true intention of the donor, and whenever he means to limit an estate to the heirs of the life tenant, no matter how his intent is expressed, an estate of inheritance will vest in the tenant for life; but when he intends his bounty to vest in certain persons, though they may be the same as the heirs at law, the life estate will not be enlarged; and a power of appointment, whether general or special, will not change this rule. Then how does this case stand ? The ultimate limitation was to " such person or persons as would be entitled to the same if the said Harriet S. Ball had died intestate seised of the said premises in fee simple, and in such manner and for such quantity of estate as such person or persons would in such case. be entitled to by law." The words are exactly commensurate with the law of descent, and operate precisely with it; the persons intended are none others than the heirs at law and all the heirs; the root of succession is the same; they are to take from her as though she died seised in fee simple; the persons are the same; they are to be those who would take at law as though she died intestate. Their estates are to be the same. They are to take for such quantity of estate as they would be entitled to at law, and they are to take as heirs; for they are to take in such manner as they would in such case be entitled to by law. It

[Dodson v. Ball.]

would be impossible to conceive of a more comprehensive and accurate periphrasis of the word "heirs" than is contained in these words.  So complete are they, that they would carry a life estate which the law confers to the husband, who surviving her, would be entitled by them to his curtesy estate.  Hence, there can be no reason found to sustain the trust in order to exclude the husband.  The words of the limitation being so exactly commensurate with the line of descent, there is no reason for upholding the trust after the life tenant has become discovert by the death of her husband, in order to carry out a special intent.  The trust being passive, the cestui que trust being armed with a power of appointment by will, the ultimate limitation being exactly coincident with the course of descent, and she being discovert, it has now no useful or valuable purpose to subserve, no special intent to fulfil, no right of the donor to protect, and no reason exists therefore why the trust should not fall.  The ultimate limitation was superadded only to meet the contingency of dying during coverture without an appointment by will.  The great underlying principle of private dominion is not affected; while the other, public policy requires the trust to be struck down.  This being the case, it is evident that the concomitant proviso that the trust should not be changed or altered without the assent of the trustees is of no importance.  The trustees had no interest in it; the trust was passive, and the provision useless, except to protect against changes which might result from the influence of the husband.  Indeed, it was wholly useless, as no power to revoke or to change was reserved: Lancaster v. Dolan, 1 Rawle; Wright v. Brown, 8 Wright 224.  Nor is the power of sale to convert and reinvest on the same trusts sufficient to prevent the trust from falling in such a case.  It was expressed to be for her own benefit, and was but an incident to protect the trust-property during coverture.  Now, being *sui juris*, the provision is not needed.  Upon the whole, then, the trust being passive, and the trustees not needed to protect any other interest, Mrs. Dodson being *sui juris* and competent to exercise any power which had been vested in the trustees, the ulterior trusts not being intended to protect any special interest, but being exactly commensurate with her own power and estate as absolute owner, there is no proper or useful purpose to uphold the trust, and it consequently fell when she became discovert.  The plaintiff is therefore entitled to a decree according to the prayer of her bill.

The decree reversed, and a decree to be drawn up, submitted and filed.