## Irwin Estate

*Herman H. Greenberg*, for accountant.
*George M. Brodhead*, trustee ad litem.

LEFEVER, J., August 29, 1962.—William H. Irwin died April 5, 1939. He was survived by his daughter,

Ruth Ann Irwin (divorced wife of Edward W. Styron, who has resumed her maiden name), and their son, Edward H. Styron. Edward has no issue, but he is in the process of adopting the two children of his wife by a former marriage.

Testator left a will by which he bequeathed and devised his entire estate to his executor, in trust, to pay the net income, monthly, to his daughter, Ruth Ann Irwin, for life, and upon her death to divide the principal among her surviving children in equal shares. He directed the trustee to retain the shares of any minor children in trust until each of them attained full age. He provided further that if his daughter should die without surviving children his trustee should distribute the principal to such persons and in such shares or proportions as his daughter should by will appoint and, in default of appointment, "to her right heirs-at-law to be ascertained as of the date of her death."

Item Third of his will provided: "I direct my Trustee to retain my Estate in the investments in which it may be found at the time of my decease, and in no case to sell any of said stocks or bonds or other securities, and I hereby release my said Trustee from all liability by reason of depreciation of any of said securities."

The will did not contain a spendthrift provision; nor a power to consume principal.

Testator left an estate valued at approximately $31,000, consisting principally of the stock of Smith, Kline & French Laboratories. Because of the fantastic increase in value of this stock, the corpus of the trust was reappraised in the present account as of October 20, 1961, at $2,540,360.51. The annual income from the trust is about $44,000.

The present account was filed to obtain a partial termination of the trust. A petition therefor was

presented at the audit. An amended petition was subsequently filed.

Notice of the audit and of the petition for partial termination of the trust was given to Ruth Ann Irwin, life-tenant, and to her only issue, Edward H. Styron. Subsequently notice was also given to George M. Brodhead, Esq., trustee ad litem, who represents any unborn or unascertained parties having a possible interest in the audit of this account or the partial termination of the trust.

At the audit evidence was produced which clearly showed (1) that Ruth Ann Irwin is 53 years old and is incapable of bearing any more children because of a hysterectomy performed in 1944, and (2) that Ruth Ann Irwin was in debt to the extent of $37,000 and Edward owed $20,000. They request relief from this burden.

The auditing judge finds as a fact that Ruth Ann Irwin is incapable of having any additional children: Honeywell Estate, 70 D. & C. 472 (1950); Kelby Estate, 80 D. & C. 1 (1952). Therefore, when she dies, if Edward survives, he will take the entire trust principal. Moreover, Edward is the potential remainderman of another trust created under the will of his uncle (testator's brother), which similarly holds a vast number of shares of Smith, Kline & French Laboratories common stock. If Edward lives to come into actual possession and enjoyment of his remainder interests in these two trusts and the corpus maintains its reappraised value, he will ultimately receive in the neighborhood of $5,000,000.

Testator does not use the word "issue" in his will, but simply "children" of his daughter. "Children" is a word of restricted meaning. It does not include grandchildren. It describes a single generation, not the entire line of descent: Hunt's Estate, 133 Pa. 260. It follows that Edward's interest in the remainder is

vested, subject only to possibility of divestment. However, in abundance of caution, the auditing judge appointed a trustee ad litem to represent unborn issue of the grandson and any other unascertained interests.

The able trustee ad litem has filed a comprehensive, thoughtful, competent report. Therein he takes the position that there is a plausible legal basis under which Ruth Ann Irwin and Edward H. Styron might by their joint action terminate the trust in whole or in part. He amply supports his position with cases (some of which are discussed hereinafter).

Premised on the foregoing conclusion, the trustee ad litem entered into an agreement of settlement with Ruth Ann Irwin, Edward H. Styron and the substituted trustee. This agreement provides, inter alia, that (1) the trustee shall sell 9,000 of the 36,000 shares of the common stock of Smith, Kline & French Laboratories; (2) from the proceeds thereof it shall pay the above-mentioned debts of Ruth Ann Irwin and Edward H. Styron, income taxes arising from the sale of the stock of Smith, Kline & French Laboratories, counsel fees, compensation to trustee and compensation to trustee ad litem; (3) the balance of the proceeds shall be invested in tax free investments; (4) Ruth Ann Irwin assigns irrevocably $5,000 of income from the trust per year to Edward for a period of ten years and one month, and the substituted trustee agrees to pay that income to him; (5) Ruth Ann Irwin "agrees that she will not hereafter exercise whatever right she may have to agree to a termination, either wholly or in part, of the said trust . . . ."

This agreement is a practical solution of a difficult legal and factual problem. It relieves life-tenant and remainderman of a pressing burden of debt. It provides the life-tenant with a larger net income after taxes. It provides a much needed annual income to Edward for ten years. It provides some diversification

in this large trust which is now almost entirely invested in a single so-called "growth" stock. Finally, it eradicates any possibility of further requests or petitions for termination of the trust. Therefore, the agreement should be approved if legally sound.

The soundness of the agreement hinges upon the right of Ruth Ann Irwin and Edward H. Styron, by their own joint action, to terminate the trust.

In Dodson v. Ball, 60 Pa. 492 (1869), the court terminated, as passive, a trust created by settlor which provided income to settlor with remainder as she should appoint, and, in default of appointment, to the lifetenant's intestate heirs. The court reviewed a number of old cases, and then established a rule in the following language on page 497:

"The rule laid down is, that when an estate for *life* only is given, followed by a general power of appointment, and on failure to appoint, to children or to special heirs, the power to appoint will not enlarge the estate of the cestui que trust to a fee, and on a failure to appoint, the children or special donees in remainder take by purchase from the donor, and not by way of limitation as heirs of the cestui que trust: 4 Kent's Com. 663; Smith v. Starr, 3 Whart. 66; Anderson v. Dawson, 15 Vesey, Jr. 532; Girard Life Insurance and Trust Co. v. Chambers, 10 Wright 490. A limitation to heirs on a failure to appoint, unquestionably enlarges a life estate to a fee by the union of estates: Ralston v. Waln, 8 Wright 279; Physick's Appeal, 14 Id. 128; Nice's Appeal, Id. 143."

In Yarnall's Appeal, 70 Pa. 335 (1872), Hannah Ellis, the donee of a testamentary power of appointment given by her grandmother, exercised that power in her own will by devising the appointive estate to Ellis Yarnall in trust for her two daughters for life, then as her daughters might appoint, and in default of appointment, the remainder to pass as if the daugh-

ters had "departed this life intestate, seized thereof in fee." Some years after the death of their mother, upon petition of the daughters, who were then unmarried and of full age, this court terminated the trust on the ground that the trust was passive and the daughters possessed a fee. Relying upon Dodson v. Ball, supra, the Supreme Court affirmed this decree, stating at page 342:

". . . when the testator devises the remainder on a failure to appoint, to the heirs of the life-tenant, or by words which mean the same thing, the inheritance will pass to the life-tenant."

The rule laid down in Dodson v. Ball was quoted and followed in Thorne's Estate, 344 Pa. 503, 517 (1942); it was followed by the Delaware County Orphans' Court in Holmes Estate, 66 D. & C. 612 (1949), and by Judge Ladner of this court (later Mr. Justice Ladner) in Snader Estate, no. 537, January term, 1910, adjudication dated July 2, 1945. See also Long v. Tradesmens National Bank and Trust Company, 108 Pa. Superior Ct. 363.

In Chase Trust, 7 D. & C. 2d 519 (1956), President Judge Klein of this court granted the petition of settlor for termination of an inter vivos trust where settlor was the sole beneficiary of the trust, with full power of appointment by will, and in default of appointment the remainder was to go to his heirs under the intestate laws.

In Horner Estate, 5 Fiduc. Rep. 648 (1955), the trust was somewhat similar to the instant one. In terminating the trust, Judge Shoyer of this court stated on page 650:

"Where there is a gift of income for life plus a gift to the life tenant of a testamentary power of appointment plus a gift to the life tenant's heirs in default of appointment, the life tenant is the sole party in interest and may, in the absence of a spendthrift

clause, terminate the trust and capture the principal."
(Citing Dodson v. Ball, supra).

It seems clear that this rule is applicable to the instant case and that Ruth Ann Irwin and Edward H. Styron, by their joint action, have the power to terminate this trust. In reaching this conclusion, the auditing judge is not unmindful of the Act of July 15, 1935, P. L. 1013, 20 PS §229, which, in effect, abolishes the rule in Shelly's case in Pennsylvania, because this statute has been held to apply to real estate only and not to personal property: Hurd's Estate, 305 Pa. 394 (1931); Mitinger's Estate, 132 Pa. Superior Ct. 475 (1938). See also Bregy, Intestate and Estates Acts of 1947, pages 3611 et seq. However, it is not necessary for the auditing judge finally to determine that Ruth Ann Irwin and Edward H. Styron have the power to terminate the trust. It is sufficient to rule that there is ample authority in the quoted cases and in logic to support the conclusion of the trustee ad litem that they have this power. Clearly, power to terminate a trust in whole implies the power to terminate the trust in part: Restatement, Trusts 2d, §331; and Yost Estate, 87 D. & C. 40 (1953). Moreover, this agreement of partial termination preserves the balance of the remainder of the trust for the wards of the trustee ad litem (unlikely as it may be that they will materialize in esse). It follows that the trustee ad litem used sound judgment in entering into this agreement.

It would be an ironical paradox if this court were powerless to aid the distressed life-tenant and her remainderman son in this unusual case. As stated supra, he will probably ultimately receive close to five million dollars, although there is no means of ascertaining when that event will occur. To refuse the requested aid would place them on the classic shipwrecked raft with ". . . water everywhere, but not a drop to

**130**

drink." The orphans' court is not impotent to afford relief in such a situation: Kaufman Estate, 27 D. & C. 2d 201 (1962).

Finally, family settlements are favorites of the law and this court fosters and approves such settlements when fairly made. The aforementioned settlement agreement of the parties is fair and reasonable. Accordingly, it is approved and is attached hereto. Awards will be made in accordance therewith.*

\*          \*          \*

And now, to wit, August 29, 1962, the account is confirmed nisi.

---

\* In reaching this conclusion, the auditing judge has not relied upon section 2 of the Estates Act of April 24, 1947, P. L. 100, nor expressed any view as to the constitutionality of the retroactive application of the 1956 amendment thereto. See Miller Estate, 27 D. & C. 2d 239 (1962).