## Ryan Estate (No. 2)

*Barry H. Hepburn* and *Ralph B. Umsted,* for accountants.

*Francis Shunk Brown, 3rd,* and *Isidor Ostroff,* for petitioner.

*H. W. Salus, Jr.,* Special Assistant Attorney General, and *Louis Marion,* for Commonwealth.

KLEIN, P. J., June 18, 1963.—Helen K. Camblos Ryan died on February 22, 1949, without issue, leaving a will which was duly admitted to probate. Letters testamentary were issued to Marie Camblos Kalteyer, testatrix' sister, who was named executrix and trustee.

Testatrix was survived by her husband, William J. Ryan, who, by writing dated November 30, 1949, elected to take under testatrix' will, which provided, inter alia:

"4th. All the rest, residue and remainder of my estate both real and personal of whatsoever kind and wheresoever situate I leave in trust to my huband William J. Ryan, the income to be paid to him quarterly by my sister Marie Camblos whom I appoint trustee and executrix of my estate.

"5th. At my husband's, William J. Ryan, death I direct my trustee to pay one half of the principal of my residuary estate to my sister Marie Camblos absolute, and the income from the remaining half of principal to my nephew by marriage William J. Cotter in quarterly payments. If William J. Cotter should die without issue before my sister Marie Camblos then I direct my trustee to pay Marie Camblos his share of principal excepting $50.00 (Fifty Dollars) a month, which if his Mother Mary Ryan Cotter still lives I wish her to receive during her lifetime, the principal to revert to my sister Marie Camblos. If my nephew William J. Cotter leaves issue they shall receive the principal of his share of my estate when the youngest child has attained the age of twenty-one.

"5th. (sic) I direct that all payments of principal or income, rents, dividends or profits held in trust shall be held by my trustee and paid only to the beneficiaries mentioned herein so that the same shall at all times be free and clear from the control, debts, liabilities, assignments and engagements now existing or hereafter incurred of the beneficiaries or any of them and of the spouse or spouses they or any of them may now have or hereafter take. Neither principal or income shall be subject to assignment by, nor execution against the beneficiary or beneficiaries of any of them. The receipts of the respective beneficiaries shall be the sole discharge and release of my said trustee."

An account was filed by the executrix on November 1, 1949, which was confirmed by me by adjudication dated December 20, 1949, in which the residuary balance was awarded "to Marie Camblos Kalteyer in trust for William J. Ryan under the terms and provisions of the will."

Marie Camblos Kalteyer married Sebastian A. Rudolph on February 7, 1959. She died January 31, 1960, leaving a will, under the provisions of which her entire estate, with the exception of three legacies totalling $1,700, was given to her husband, Sebastian A. Rudolph, who was named executor.

By decree of Shoyer, J., dated July 13, 1960, The First Pennsylvania Banking and Trust Company and W. Horace Hepburn, 3rd, Esq., were appointed substituted trustees under the will of the present testatrix.

On April 28, 1960, Sebastian A. Rudolph, as executor under the will of his wife, the deceased trustee, stated an account which came on for audit before Shoyer, J.

On August 3, 1960, William J. Ryan, testatrix' surviving husband filed a petition for a citation to show cause why he should not receive an allowance from

principal under section 2 of the Estates Act of 1947, in which he alleged that he was 85 years of age, "that he is entitled to be made comfortable for the few remaining years of his life," and that, with "the passing of years and changes in economic conditions, the income to be derived from the trust and other available income is not sufficient to maintain him." He averred, further:

"12. . . . that the trust has totally failed of its purpose which was to provide him with an income which would permit him to live comfortably for life. Unless the trustees are allowed to expend principal sufficient to maintain him, he will be forced to look to private and governmental charity."

He therefore requested that he be awarded "from the principal of the trust sufficient principal over and above income so that the amount paid him will be a minimum of $4,378.40, annually."

In his adjudication, bearing date January 13, 1961, Shoyer, J., said:

"The Auditing Judge is satisfied that the primary purpose of the trust, namely the support and well-being of testatrix's husband, William J. Ryan, cannot be carried out because the income is inadequate, and that an allowance out of principal will more nearly approximate testatrix' intention. Accordingly, the trustee is directed to pay William J. Ryan, in addition to the net income, the following amounts out of principal: $250., forthwith and $100 per month, and in addition thereto to pay such medical, nursing and hospital expenses as may reasonably be necessary for his comfort and well-being."

Exceptions were filed to this adjudication, which were dismissed in an opinion by Saylor, J., filed March 10, 1961, in which, however, the payments allowed out of principal were limited to a total of $25,000, as provided in the Estates Act of 1947. See 24 D. & C. 2d 41.

An appeal was taken to the Supreme Court. The decree appealed from was affirmed per curiam on Judge Saylor's opinion, reported in 404 Pa. 230 (1961).

On February 19, 1963, a decree was entered by Judge Shoyer upon petition filed by the surviving husband, with the consent of counsel for the trustees, increasing the allowance to him from $100 to $200 per month.

William J. Cotter, testatrix' nephew by marriage and cestui que trust of one-half of the principal in remainder, died July 11, 1962, leaving no issue, his mother, Mary Ryan Cotter, also entitled to a share of income in remainder, if William J. Cotter should predecease her, having predeceased him on April 25, 1950.

In December, 1962, William J. Ryan, the surviving husband, filed another petition in which he alleges:

"12. There are no cestui que trustents who take after the death of your petitioner. Wherefore, the trust has become a dry trust. The remainder of the trust would fall into the Residuary Estate of Helen K. Camblos Ryan, of whom the sole surviving heir is your petitioner."

Accordingly, a citation was issued to the substituted trustees to show cause "why they should not file an account and the trust be terminated."

After the filing of preliminary objections, answers, reply to new matters and answer to reply, the trustees were directed to file an account.

An account was filed on April 2, 1963, which was called for audit by me on May 13, 1963, and is the fund presently accounted for.

The principal thrust of the argument of counsel for the husband appears to be that, by reason of the death of Mary Camblos, decedent's sister, and William J. Cotter, her husband's nephew, without issue, as well as of his mother, Mary Ryan Cotter, in the lifetime of the husband, who is alive, all of the beneficiaries who had an interest in the estate are now dead, and, con-

sequently, in spite of the spendthrift limitations, the trust is a dry one and should be terminated and the principal awarded to said husband, the surviving life tenant.

This contention is completely without merit and runs counter to many basic principles of construction which prevent termination of this testamentary trust.

William J. Ryan was born September 2, 1875. He was in his seventy-fourth year when his wife died in 1949. He had made and lost a fortune of between two and three million dollars. He had no assets or earning power and had several substantial judgments entered of record against him. There can be no question that his wife's principal concern was his support, to enable him to live comfortably for his remaining days. In order to achieve this end, testatrix placed the residue of her estate in trust, giving him the entire income for life and circumscribing her gift with stringent, spendthrift limitations. Consequently, testatrix' primary purpose cannot be fully accomplished as long as her husband is alive; only his death can execute this trust.

In Zoller Estate, 373 Pa. 451 (1953), Mr. Justice Allen M. Stearne said (p. 454):

"A trust is active where from the nature of the trust the trustees are charged with the performance of active and substantial duties with respect to the control, management and disposition of the trust property for the benefit of the *cestui que trust*: Dodson v. Ball, 60 Pa. 492; Henderson's Estate, 258 Pa. 510, 102 A. 217. See also: Van Syckel's Trust, 319 Pa. 347, 179 A. 721; Scott on Trusts, §69.1; Restatement, Trusts, §69 et seq."

The trust in the present case is clearly an active one within this definition. Moreover, a direction to pay the net income from a trust estate to a beneficiary imposes active duties upon a trustee by necessary implication. See Sheasley Trust, 366 Pa. 316, 320 (1951).

In Bosler Estate, 378 Pa. 333 (1954), the Supreme Court refused to terminate a testamentary trust with spendthrift provisions upon petition of the life tenant, who was testatrix' son, 65 years of age, and about to be retired from his employment with the United States Navy, although the fund had been so diminished that the income therefrom was not adequate to support the son, who had no issue to take in remainder and who had a power of appointment in default of issue. Mr. Chief Justice Stern said (p. 336):

"But if the purpose of the settlor in establishing the trust has not been fully accomplished, and if the settlor is deceased and therefore incapable of consenting, the trust cannot be terminated even though all the beneficiaries desire that it should be: Bowers' Trust Estate, 346 Pa. 85, 87, 88, 29 A. 2d 519, 520, and cases there cited."

And the court re-affirmed the well-entrenched rule that the presence of spendthrift provisions is, of itself, sufficient to prevent the termination of a trust (p. 337):

"The cases are adamant in holding that where the life interest is limited by a spendthrift provision the trust cannot be terminated by the court: Dodson v. Ball, 60 Pa. 492, 496; Shower's Estate, 211 Pa. 297, 60 A. 789; Moser's Estate, 270 Pa. 217, 113 A. 199; Baughman's Estate, 281 Pa. 23, 39, 126 A. 58, 64; Rehr v. Fidelity-Philadelphia Trust Company, 310 Pa. 301, 304, 305, 165 A. 380, 381; Harrison's Estate, 322 Pa. 532, 185 A. 766; Bowers' Trust Estate, 346 Pa. 85, 88, 29 A. 2d 519, 520; Heyl Estate, 352 Pa. 407, 411, 43 A. 2d 130, 131, 132; Restatement, Trusts, §337, comment 1. . . It was said in Morgan's Estate (No. 1), 223 Pa. 228, 230, 231, 72 A. 498, 499: 'It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor.' "

Regardless of all other considerations, an insurmountable obstacle confronting the life tenant in his effort to terminate this trust is the obvious fact that all of the parties having a beneficial interest in the estate in remainder have not consented to the termination. On the contrary, Sebastian A. Rudolph, executor and sole beneficiary under the will of Marie Camblos Kalteyer Rudolph, deceased sister of testatrix and a principal remainderman, strenuously objects to termination.

The only gift to William J. Ryan, the petitioner, is a gift of income. It is crystal clear that he receives no gift of principal under the will.

Testatrix provided that "at my husband's, William J. Ryan's, death I direct my trustee to pay one half of the principal of my residuary estate to my sister Marie Camblos absolute, . . ." Although, under the circumstances of this case, it is not necessary to construe the nature or extent of the remainder interests at this time, it seems reasonably clear, in view of the law's preference for vested estates (Hope Estate, 398 Pa. 470 (1960)) and the absence of a gift over upon the sister's death (Brumbach Estate, 373 Pa. 302 (1953)), that Mary Camblos was given a vested remainder in at least one-half of the principal of the residuary estate, which passed under her will to her husband upon her death.

Testatrix provided, with respect to the other half of the principal, that, in the event of the death of William J. Cotter, without issue, before her sister Marie Camblos, this share of the principal was also to revert to the sister. Counsel for Sebastian A. Rudolph contend that this share of the estate also vested in Marie Camblos, claiming that the intention of testatrix was to leave her entire residuary estate to her sister, if William J. Cotter should die without issue. There appears to be considerable merit to this contention, but

we refrain from expressing any opinion with respect thereto at this time, except to point out that if this contention is not upheld, an intestacy would appear to result with respect to this share, in which event the sister's estate would also have an interest therein, as she apparently was the sole surviving collateral next of kin of decedent.

The request to terminate the trust is therefore denied. William J. Ryan is receiving at the present time, in addition to the net income earned by the estate $200 a month from principal. Provision has also been made for the payment out of principal of such medical, nursing and hospital expenses as may be reasonably necessary for his comfort and well-being. If he requires any additional payments from principal for his support and well-being, it will be necessary for him to again petition under section 2 of the Estates Act of 1947. . . .

And now, June 18, 1963, the account is confirmed nisi.